

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 14, 2020

**<u>BY EMAIL</u>**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Julio Marquez-Alejandro*, et al., S6 16 Cr. 387 (JMF)

Dear Judge Furman:

      The Government respectfully writes to oppose the January 9, 2020 motion of defendants Julio Marquez-Alejandro, Luis Blondet, and William Vazquez-Baez to adjourn their February 25, 2010 trial for at least six months. As discussed below, the Court should deny the defendants' extraordinary request.

      The defendants primarily argue that they cannot adequately prepare for trial in six weeks because the Government's enterprise letter filed on December 27, 2019 (the "December Enterprise Letter") "dramatically and drastically altered the contours of this case." *See* Def. Br. 1. The defendants also assert they have been prejudiced by late or incomplete discovery and that they face practical challenges, such as translation issues, separation orders, and a recent earthquake in Puerto Rico that make it more difficult than usual to prepare for trial. *See* Def. Br. 2-3. Because these arguments are largely inaccurate, they do not counsel in favor of an adjournment. Rather than remaking the contours of case or revealing deficiencies with the Government's Rule 16 discovery productions, the December Enterprise Letter previewed for the defense, sixty days before the scheduled trial date, expected trial testimony of the Government's cooperating witnesses about their own and the trial defendants' participation in a decade-long racketeering conspiracy.

    The Government's advance disclosures and discovery productions have more than adequately empowered the defendants to prepare for trial on February 25, 2020. Accordingly, the Court would be well within its discretion to deny the defendants' motion in its entirety. In light of logistical challenges presented by the recent earthquake and power outages in Puerto Rico, however, the Government consents to a short adjournment of two to four weeks and, as described below, further offers to voluntarily limit the scope of its own proof to reduce the magnitude of the defendants' pre-trial preparations.

January 14, 2020
Page 2

### A.    The Government's Disclosures

This is not a case where the defendants have been left in the dark about the allegations against them. Through a combination of the charges in the Indictment, extensive Rule 16 discovery, the facts detailed in the Government's pretrial motions, and additional disclosures that have been made leading up to trial, the Government has disclosed significant and detailed information about the charged racketeering enterprise, La Organización de Narcotraficantes Unidos ("La ONU" or the "Enterprise").

#### 1.    The Indictment

The initial racketeering indictment, returned in May 2017, describes La ONU as "a criminal organization whose members and associates engaged in acts of violence, including murder, and distribution of controlled substances," notes that its "[m]embers and associates . . . used physical violence and threats of violence, including murder, attempted murder, assault, and attempted assault against various people," and that the defendants conspired with one another to conduct La ONU's affairs through "multiple acts involving murder" and "trafficking in controlled substances." S1 16 Cr. 387 (JMF) ¶¶ 1, 4-5. These descriptions remained unchanged in subsequent indictments, including in the sixth superseding indictment, returned on December 10, 2019 (the "Indictment").[1]

#### 2.    The June Enterprise Letter and July Pretrial Motions

In advance of the trial for the non-murder defendants, which had been scheduled for September 2019, the Government filed a six-page letter providing notice of its racketeering enterprise evidence and Rule 404(b) proof (the "June Enterprise Letter"). ECF Doc. 253. Although the June Enterprise Letter contained certain information specific to the defendants in the first trial group, it also provided significant and detailed descriptions of La ONU as an organization committed to using acts of violence, including numerous acts of murder, to sustain itself. For example, the letter described, among other things:

- How La ONU and its rivals descended into a state of "war";
- That "[m]embers of La ONU invaded La Rompe ONU housing projects and killed La Rompe ONU members";
- That La ONU leaders used corrupt local law enforcement officers "to facilitate or commit murders";
- That "La ONU leaders repeatedly and systematically authorized the assault or murder[] of suspected informants, undercover officers, lay witnesses, and even La ONU members whose personal misconduct risked a law enforcement response"; and
- That "[m]embers of La ONU who committed murders typically advanced in status within the criminal enterprise."

---

[1] The Indictment, which was returned about two and half months prior to the scheduled trial date, added Vazquez-Baez as a defendant in the charged racketeering conspiracy and added multiple acts involving bribery as an additional racketeering predicate. Indictment ¶ 5.

January 14, 2020
Page 3

ECF Doc. 253 at 2-3. The June Enterprise Letter also described how La ONU leaders made decisions in concert, including decisions about who should be murdered and how to fund such violence. *Id.* at 2, 5.

Similarly, the Government's omnibus opposition to the defendants' pretrial motions, filed in July 2019, made clear that La ONU members regularly and systematically engaged in acts of violence against rivals, members, and suspected informants, including numerous murders not separately charged in the then-operative indictment. ECF Doc. 276 at 8-11.

### 3.   The December Enterprise Letter

On December 27, 2019, the Government supplemented its June Enterprise Letter with additional racketeering enterprise evidence with respect to the defendants in the February 25, 2020 trial group. In its July pretrial motions, the Government had indicated its intention to file such a letter sixty days prior to the start of the February trial, which the Court ruled was "more than adequate under the law." ECF Doc. 301 at 11.

The defendants identify twenty-one homicides described in the December Enterprise Letter as not having been previously described in a prior letter or filing. Those homicides arise out of seventeen incidents, as two of the incidents involve double-murders and one involves a triple murder.[2] The December Enterprise Letter also listed the five incidents separately charged in the Indictment and several other incidents not included in the defendants' computation of the twenty-one additional homicides, for a total of twenty-eight violent incidents involving murder, attempted murder, an offer to commit murder-for-hire, and murder conspiracy.

In its description of each violent incident, the Government endeavored to provide the defendants notice as to the date, location, participants, and motivation for the act of violence. Such notice enables the defendants to file timely *in limine* motions and requests to charge. Moreover, the details set forth in the December Enterprise Letter show that these incidents comport with the Government's prior disclosures regarding the nature and extent of La ONU's systemic violence. In particular, each of the murders and attempted murders recited in the December Enterprise Letter was ordered and carried out (i) as part of "war" with rivals; (ii) as part of disputes over drug territory or as revenge for theft of drugs; (iii) as discipline for members who displeased La ONU's leadership; or (iv) as retaliation for cooperation with law enforcement—the same categories of violence that the Government has always alleged stand at the core of La ONU and which the Government has described to the defendants through the Indictment, the June Enterprise Letter, and the July Pretrial Motions.

---

[2] Of those seventeen murder incidents (a) ten involve the direct participation of Marquez-Alejandro, *see* December Enterprise Letter, pp. 4-8, ¶¶ 2-5, 8, 9, 17, 20, 23, and 24; (b) four involve the direct participation of Blondet, *see id.*, pp. 4-8, ¶¶ 1, 2, 17, and 28; and (c) two involve the direct participation of Vazquez-Baez, *see id.*, pp. 4-8, ¶¶ 11 and 13.

January 14, 2020
Page 4

4.   Discovery Relevant to Murders Described in the December Enterprise Letter

The December Enterprise Letter consists, almost entirely, of a summary of expected Government witness testimony. As such, rather than revealing a "failure to produce complete discovery," Def. Br. 2, the December Enterprise Letter represents a concise preview of the Government's Jencks Act material, which, according to the original schedule, would have been produced about two-and-a-half weeks after the December Enterprise Letter.[3]

*First*, as to thirteen of the violent incidents listed in the December Enterprise Letter, the Government does not have any Rule 16 discovery in its possession, custody, and control, and does not expect to obtain any such discovery.[4] These incidents are described at paragraphs 5, 9, 12, 13, 14, 17, 18, 19, 21, 24, 25, 27, and 28. The Government expects to prove, through relevant cooperator testimony, that each of these incidents were related to the Enterprise. *See generally United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) ("proof of the enterprise and pattern elements of racketeering may well entail evidence of numerous criminal acts by a variety of persons"); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (the Government "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."). In the event that the defendants wish to move *in limine* for the exclusion of testimony about any of these incidents—for insufficient relatedness to the Enterprise or any other reason—the December Enterprise Letter provides adequate notice for them to do so. No earlier disclosure of these incidents was required, and, indeed, there was none to be made. The enterprise letter is the disclosure.

*Second*, as to an additional eight violent incidents listed in the December Enterprise Letter, the Government has obtained and recently produced discovery, in the form of homicide files. The chart attached as Exhibit A[5] describes those materials, as well as the date of disclosure and the approximate date the Government became aware of the incident or of the incident's relevance to the charged RICO conspiracy. Exhibit A notes that the Government produced six homicide files in December 2019 (corresponding to paragraphs 1, 2, 4, 8, 20, and 23) and two homicide files on January 14, 2020 (corresponding to paragraphs 3 and 11) (the "Recently Produced Homicide Files"). For the remaining incident in Exhibit A (corresponding to paragraph 26), the relevant discovery consists of intercepted phone calls, which the Government produced with their corresponding summaries more than two years ago.

---

[3] In light of the pending adjournment motion, counsel for Marquez-Alejandro, Blondet, and Vazquez-Baez have consented to the Government's delay of its expert notice and first Jencks Act production until the Court confirms the trial date.

[4] In the event that the Government does come into possession of such material, it will promptly disclose it to the defense.

[5] Exhibit A does not include (a) the thirteen incidents described previously for which the Government's only evidence is cooperator testimony; (b) the murders separately charged in the Indictment; or (c) the incident listed at paragraph 16 of the December Enterprise Letter, which was discussed in the June Enterprise Letter and for which discovery was produced in May 2019. The Government understands that the incident in paragraph 16 is not included in the defendants' list of "21 additional homicides." The Government may introduce some law enforcement testimony or exhibits related to this incident, in addition to its cooperator testimony.

January 14, 2020
 Page 5

The materials listed in Exhibit A reflect the balance of the Rule 16 discovery relevant to these incidents. The Government does not anticipate obtaining additional police or forensics files. (As it has throughout the case, the Government is obtaining English-language translations of materials produced in Spanish and will produce translations to the defense on a rolling basis.) In other words, aside from translations, which it will produce promptly upon receipt, the Government does not have additional Rule 16 discovery relevant to the incidents listed in Exhibit A in its possession, custody, or control, and does not anticipate obtaining any such material.

To be clear, the Government does not intend to use the Recently Produced Homicide Files in its case-in-chief, with the possible exception of a small number of crime scene photos.[6] Rather, the Government intends to prove the violent incidents listed in Exhibit A through cooperator witness testimony. The Government produced the homicide files as items that arguably could be material to the defendants in preparing their defenses. *See* Fed. R. Crim. P. 16(E)(i). Indeed, the Government believes these files may be useful for answering some of the very questions defendants raise in their motion. *See* Def. Br. 3 ("How is a defendant to find witnesses to the event? How is a defendant to gather forensic and other evidence to challenge the government's allegations, which may predominantly be in the form of cooperator testimony?").

Because the Government does not intend to offer trial exhibits culled from the Recently Produced Homicide Files (other than photographs, as noted); or any reports or tests related to these incidents; or any testimony of police officers, forensic investigators, ballistics experts, or medical examiners involved in the collection of evidence with respect to those murders, the incidents listed in Exhibit A do not pose a materially different or greater trial burden on defendants than those as to which the Government has no Rule 16 discovery: the Government expects to prove these incidents primarily through cooperator testimony. Further, of the incidents listed in Exhibit A, the Government expects that for all but two (corresponding to paragraphs 8 and 20), Government cooperating witnesses will discuss their participation in the incidents as part of own criminal history and *Giglio* testimony.[7]

Finally, the defendants assert they did not receive discovery relevant to certain currency seizures that the Government alleges constituted narcotics proceeds generated as part of the charged racketeering enterprise. Def. Br. 2. Law enforcement reports related to three of the seizures were produced on June 30, 2017, in a folder labeled 016134-70. The Government produced reports related to the remaining two seizures (totaling eleven pages) on January 14, 2020; discovery for those incidents is now complete.

---

[6] The Government anticipates offering, at most, a few recently obtained crime scene photographs from the police files corresponding to incidents 2 and 3. The Government anticipates introducing such photographs through cooperator testimony and can particularly flag those items for defense counsel when it produces its trial exhibit list on the schedule set by the Court.

[7] The Government further notes for the Court and counsel that it anticipates producing at the same time as its cooperator 3500 production at least ten homicide files for homicides that do not directly involve the trial defendants but which constitute arguable *Giglio* for Government cooperating witnesses.

January 14, 2020
Page 6

### B.    Discussion

The defendants have not raised "compelling reasons" justifying anything close to a six-month adjournment. *See generally Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons."). Indeed, many important considerations weigh against an adjournment, including the fact that the date has been set since December 2018, the public has an interest in a speedy trial of these defendants, and a significant delay imposes logistical and scheduling obstacles for the Court and courthouse staff, the attorneys for both sides, the Government's agents and interpreters, and dozens of witnesses who were prepared to travel to attend a trial starting February 25, 2020.

### 1.    The December Enterprise Letter Does Not Alter the Scope of the Case

The defendants argue that the December Enterprise Letter dramatically expanded the scope of the charged case. To the contrary, the December Enterprise Letter contained concrete, specific instances of what the defendants have always understood the Government seeks to prove: the defendants participated in a violent enterprise through multiple acts of murder and drug trafficking. *See* S1 16 Cr. 387 (JMF) ¶ 1-5. Nor has the time frame of the charged conduct "expanded exponentially." Def. Br. 16. In fact, the charged time-period of the racketeering conspiracy, 2004 to 2016, has not been changed through any of the superseding indictments.[8]

Moreover, the defendants are incorrect that the evidence set forth in the December Enterprise Letter "dwarfs by a considerable margin the evidence related to the specific charges in the sixth Superseding Indictment." Def. Br. 2 (emphasis omitted). *First*, the Government expects to prove that each of the crimes set forth in the December Enterprise Letter is direct evidence of the racketeering conspiracy—which is, of course, charged in the Indictment. It is well established in this Circuit that the Government may introduce evidence of uncharged criminal acts as background for, and to prove the existence of, a racketeering enterprise that engaged in racketeering activity. *See*, *e.g.*, *United States v. Coppola*, 671 F.3d 220, 244-45 (2d Cir. 2012); *United States v. Payne*, 591 F.3d 46, 64 (2d Cir. 2010); *United States v. Mejia*, 545 F.3d 179, 206-07 (2d Cir. 2008). *Second*, as previously noted, other than the incidents corresponding to murders separately charged in the Indictment and to the murder described at paragraph 16, the Government anticipates that the principal evidence of incidents listed in the December Enterprise Letter that the Government will offer in its case-in-chief will be the testimony of cooperating witnesses. Accordingly, the trial will not feature "nearly 30 different crime scenes and accompanying investigations," at least, not during the Government's case-in-chief. Rather, the primary value of these homicide files, if any, will be as potential impeachment material for Government witnesses or as a source of potential defense exhibits or witnesses.

---

[8] The Government expects to argue in its forthcoming motions *in limine* that certain incidents that predate 2004 are direct evidence of the charged conspiracy, for reasons that will be set forth in the motions.

January 14, 2020
Page 7

> 2. Nothing in the December Enterprise Letter Risks Constructive Amendment of the Indictment

Admission at trial of the acts listed in the December Enterprise Letter would not amount to a constructive amendment of the Indictment. A constructive amendment occurs when the Government's proof and the trial court's jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996). Here, the Indictment charges the defendants with conspiring to conduct the affairs of La ONU through murders and attempted murders, among other means. *See* Indictment ¶ 1-9. The December Enterprise Letter provides a list of incidents that reflect just such an enterprise. That the December Enterprise Letter provides more specificity than the Indictment does not constitute an amendment because "a generally framed indictment encompasses the specific legal theory or evidence used at trial." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003). Furthermore, an adequately pleaded RICO conspiracy charge need not specify the specific predicate or racketeering acts that each defendant agreed would be committed. *See, e.g.*, *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011).

The cases the defense cites do not hold otherwise and, in fact, largely concern whether specific evidence was admissible pursuant to the Federal Rules of Evidence. *See United States v. Clemente*, 22 F.3d 477, 479-480 (2d Cir. 1994) (rejecting argument that the judge improperly amended the indictment by permitting testimony about additional acts of extortion as evidence of knowledge, intent, and absence of mistake or accident" pursuant to Rule 404(b) of the Federal Rules of Evidence); *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) (affirming district court's decision to admit evidence of an uncharged act as direct evidence of a murder conspiracy and proper under Rule 404(b)); *United States v. Wong*, 40 F.3d 1347, 1378 (2d Cir. 1994) (rejecting argument that admission of evidence of a "melee" involving beer bottles and gunfire was cumulative and unfairly prejudicial); *United States v. Coiro*, 922 F.2d 1008, 1016 (2d Cir. 1991) (affirming the admission of a particular episode of bribery as "clearly relevant to the crimes charged as 'conduct designed to prevent government detection of the illegal activities of the members of the enterprise,' as alleged in the RICO count").

> 3. The Timing of the Government's Disclosures Has Been More Than Adequate for the Defendants to Prepare for the February 25, 2020 Trial Date

The Government set forth for the Court and the parties in its July 2019 pretrial motions its anticipated schedule for various pretrial disclosures, including the December Enterprise Letter, its expert notice, and its Jencks Act material production dates. That schedule was—by design—significantly earlier than is typical for trials in this district, as the Government endeavored to account for many of the concerns the defendants now raise regarding the scope of the charged Enterprise and the difficulty of investigating the Enterprise's Puerto Rican conduct.

Any argument that the defendants were not on notice since, at the latest, June 6, 2019 that La ONU involved numerous murders not specifically charged as VICARs is entirely without merit. Rather, the defendants have had notice of the scope of the Government's case against them for years. The Government's June Enterprise Letter and July motion papers provided further factual

January 14, 2020
Page 8

detail to the defendants, and the December Enterprise Letter provided them with two months' notice of the specific acts of violence the Government will seek to prove at the February trial.

Additionally, because the vast majority of the incidents set forth in the December Enterprise Letter will be proven entirely by cooperator testimony, the letter constitutes a compilation, in summary form, of the Jencks Act material for the Government's witnesses, disclosed about two-and-a-half weeks prior to the scheduled production of that material. Indeed, exempting the separately charged murders, approximately twelve of the remaining incidents set out in the December Enterprise Letter constitute *Giglio* for one or more cooperating witnesses who were participants in the violence. Any argument that disclosure of this Jencks Act material sixty days prior to trial is grounds for a lengthy adjournment should be rejected.

Furthermore, for the reasons already described, the defendants are mistaken to imply either that a substantial amount of additional discovery remains outstanding or that their trial preparation has been hindered by the timing of the Recently Produced Homicide Files. *See* Def. Br. 2 (noting of the "21 additional homicides" that "discovery has not been produced *at all* for 13 of them"). Discovery is complete for these incidents, and, except as otherwise noted, the Government anticipates neither offering materials from the Recently Produced Homicide Files in its case-in-chief, save for a few photographs, nor calling law enforcement witnesses or experts to discuss those incidents. Rather, the files' limited value is as potential impeachment material for Government witnesses or as a source of potential defense exhibits or witnesses. Five of the Recently Produced Homicide Files were produced about two-and-a-half months prior to the scheduled trial date; one was produced two months prior to trial; and two were produced six weeks prior to trial. That schedule is more than sufficient for the defense to make use of the files as an aid to preparing cross-examinations of Government cooperating witnesses.[9]

### 4. The Government Would Be Willing to Voluntarily Forgo Certain Incidents in the December Enterprise Letter in Lieu of a Lengthy Adjournment

The Government respectfully submits that, in light of the forgoing, an adjournment is unnecessary to facilitate adequate trial preparations. Nonetheless, in appreciation of the additional and unexpected challenge raised by the recent series of earthquakes and power outages in Puerto Rico at a critical time in the defense preparation, the Government would be willing to consent to a reasonable adjournment of two to four weeks.

Additionally, to the extent the Court were inclined to maintain the trial date or to adjourn it by no more than four weeks and wanted to pare down the number of incidents, the Government would respectfully propose that it voluntarily forgo any evidence of the following five incidents described in the December Enterprise Letter:

- The murder described at page 4, paragraph 5;

---

[9] To the extent that it may have been helpful to the defendants, prior to filing the instant motion, to understand that the Government does not intend to use the Recently Produced Homicide Files in its case-in-chief, the Government reiterates its availability to discuss any and all of the discovery materials with counsel.

January 14, 2020
Page 9

- The murder described at page 5, paragraph 8;
- The murder described at page 5, paragraph 9;
- The murder described at page 6, paragraph 17; and
- The offer to commit murder for hire described at page 8, paragraph 27.

Should the Court grant an adjournment of longer than a month, as the defendants request, the Government respectfully submits it should be permitted to prove those incidents, primarily through witness testimony. The Government further notes that it makes this offer with the understanding that it would discuss with the defense the nature of the Government's cooperating witnesses' own participation in these acts. In the absence of a commitment by the defendants not to cross-examine Government witnesses about these incidents, the Government respectfully submits that it should be permitted to elicit its witnesses' own participation in any of these acts as *Giglio*.

Additionally, the Government notes that defendant Jason Dones-Gonzalez did not join in the motion to adjourn the trial and was scheduled to plead guilty today. Dones-Gonzalez was unable to attend due to illness; however, the Government expects him to plead guilty in the near future. Assuming that Dones-Gonzalez is not among the trial defendants, the Government would be willing to forgo proof of the following three incidents, which it alleges are direct proof of the charged Enterprise but which do not involve the participation of other trial defendants:

- The murder described at page 6, paragraph 14;
- The murder described at page 7, paragraph 19; and
- The murder described at page 7, paragraph 21.

As before, in the absence of a commitment by the defendants not to cross-examine the Government's cooperating witnesses about those incidents, the Government respectfully submits it should be permitted to elicit its witnesses' own participation in any of these acts as *Giglio*.

Except as set forth in this subsection, the Government respectfully submits that none of its enterprise evidence should be excluded for inadequate notice or disclosure. The incidents in the December Enterprise Letter were disclosed and described with particularity two months prior to trial. These incidents are not only entirely unsurprising given the Government's prior disclosures about the scope, nature, and persistence of La ONU's violence, they are inextricably intertwined with the cooperating witnesses' expected testimony about their own participation in this murderous organization. Particularly in light of the Government's consent to a short adjournment of trial, no further curtailment of the Government's proof would be fair, reasonable, or necessary.

### Conclusion

The defendants have long been on notice that they would be tried for their role in a decade-long conspiracy replete with murder and drug trafficking. Furthermore, the defendants have had ample time and notice to make use of the discovery in their trial preparations, although, as always, the Government will continue to promptly disclose any Rule 16 materials that come into its possession, custody, and control. In their motion, the defendants materially overstate the volume and significance of recently produced discovery and minimize the degree of notice they have received over the several years this case has been pending. Nonetheless to streamline defense

January 14, 2020
Page 10

preparations and in recognition of the recent earthquake and electricity-related difficulties in Puerto Rico, the Government would offer to voluntarily forgo certain evidence to avoid an adjournment of longer than one month.

In light of the public's interest in a timely trial, the defendant's longstanding awareness of the nature and scope of the Government's allegations, and the relatively modest supplemental discovery that has been provided, an adjournment of six months is unwarranted. The Court should adjourn the trial, if at all, for no more than one month.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:    /s/
Allison Nichols
Lara Pomerantz
Andrew Thomas
Assistant United States Attorneys
(212) 637-2366/2343/2106

cc:    Counsel to Marquez-Alejandro, Blondet, and Vazquez-Baez

**Exhibit A**

| Act of Violence (by para.) | Approx. Date Gov't Aware of Incident | Date of First Disclosure of Incident | Nature of Disclosure |
|---|---|---|---|
| 1 | Aug. 2019 | Dec. 10, 2019 | Puerto Rico Department of Justice ("PR DOJ") and Institute of Forensic Sciences ("ICF") files, including crime scene report; interview reports and witness declarations; and court paperwork (12/10/19)<br><br>December Enterprise Letter (12/27/19) |
| 2 | Aug. 2019 | Dec. 10, 2019 | ICF files, including crime scene photographs; crime scene report; and autopsy reports (12/10/19)<br><br>December Enterprise Letter (12/27/19) |
| 3 | Nov. 2016[*] | Dec. 27, 2019 | December Enterprise Letter (12/27/19)<br><br>Puerto Rico Police Department ("PRPD") and ICF files, including investigator's notes, crime scene photographs, and ballistics reports (1/14/20) |
| 4 | Sept. 2019 | Dec. 10, 2019 | Puerto Rico Police Department ("PRPD") and ICF files, including investigator's notes; crime scene report; and autopsy report (12/10/19)<br><br>December Enterprise Letter (12/27/19) |
| 8 | Sept. 2016** | Dec. 10, 2019 | PRPD and ICF files, including interview reports; crime scene report; and autopsy report (12/10/19)<br><br>December Enterprise Letter (12/27/19) |
| 11 | Feb. 2017** | Dec. 27, 2019 | December Enterprise Letter (12/27/19)<br><br>PR DOJ and PRPD investigative files, including police reports; witness interviews; and materials related to the charging and arrest of certain suspects (1/14/20) |
| 20 | Sept. 2016 | Nov. 4, 2018 | Transcripts of trial testimony (11/4/18)<br><br>PRPD and ICF files, including investigator notes; newspaper clippings; forensic examination reports; and photographs (12/10/19)<br><br>December Enterprise Letter (12/27/19) |
| 23 | Feb. 2017 | Dec. 19, 2019 | PRPD and ICF files, including investigator notes, autopsy photographs; crime scene findings report; and forensic paperwork (12/19/19)<br><br>December Enterprise Letter (12/27/19) |
| 26 | Sept. 2016 | June 30, 2017 | Audio recordings and translation summaries of intercepted calls (6/30/17)<br><br>December Enterprise Letter (12/27/19) |

---

[*]Although the Government initially was aware of the incident from a cooperator who heard about it from another person, it did not undertake to find the PRPD file until a second cooperator disclosed in December 2019 his own direct participation in the incident.

** For these incidents, the prosecution team is aware of at least one witness who discussed the relevant incident with federal law enforcement prior to the inception of this Office's investigation. The date reflected is the Government's best estimate of the earliest of when it spoke to a witness about the incident or obtained a record of a witness's prior statement about the incident.