K1MEBLOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

v.                              16 CR. 387 (JMF)

BLONDET, et al.,

                Defendants.

------------------------------x

                                        New York, N.Y.
                                        January 22, 2020
                                        3:00 p.m.

Before:

                    HON. JESSE M. FURMAN,

                                        District Judge


                        APPEARANCES

GEOFFREY S. BERMAN,
     United States Attorney for the
     Southern District of New York
ANDREW M. THOMAS,ESQ.
LARA POMERANTZ, ESQ.
ALLISON C. NICHOLS, ESQ.
     Assistant United States Attorneys

LOUIS MARMOREK FREEMAN,ESQ.
JOSHUA LEWIS DRATEL, ESQ.
     Attorneys for Defendant Luis Blondet


BOBBI C. STERNHEIM, ESQ.
RICHARD A. REEVE, ESQ.
ALEXANDER HUOT O'NEILL, ESQ.
GRAINNE O'NEILL, ESQ.
     Attorneys for Defendant Julio Marquez- Alejandro

AVRAHAM MOSKOWITZ, ESQ.
BRUCE D. KOFFSKY, ESQ.
   Attorneys for Defendant William Vasquez-Baez

ALSO PRESENT:  CRISTINA WEISZ, Spanish Interpreter

                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

K1MEBLOC

K1MEBLOC

MR. THOMAS:  Good afternoon.  Andrew Thomas, Lara Pomerantz, and Allison Nichols for the United States.

MS. STERNHEIM:  Good afternoon, Judge.  For Julio Marquez-Alejandro, who is the third seated in the jury box, Bobbi C. Sternheim, Richard Reeve, Grainne O'Neill and Alex Huot O'Neill.

THE COURT:  Good afternoon.

MR. DRATEL:  Good afternoon.  Joshua Dratel for Luis Blondet.

MR. FREEMAN:  Also, Louis Freeman for Mr. Luis Blondet.

MR. DRATEL:  He's in the seat furthest from the Court in the jury box.

MR. MOSKOWITZ:  Avraham Moskowitz and Bruce Koffksy for William Vasquez-Baez, who is the individual closest to your Honor in the jury box.

MR. KOFFSKY:  Good afternoon, your Honor.

THE COURT:  Good afternoon to all of you.  I'm sorry to keep you waiting.  I have a jury that is deliberating and we're dealing with some jury notes and other such things.

A couple of preliminary matters.  First of all, given the number of lawyers, if you could just identify yourself if and when you speak, that would be helpful for the court reporter, I'm sure.

Second, let me just confirm that the defendants are

able to understand the Spanish language interpreter, Ms. Weisz, who is here with us today.

Going in order down the line, Mr. Vasquez-Baez, are you able to understand the Spanish language interpreter?

DEFENDANT VASQUEZ-BAEZ:    Yes.

THE COURT:  If at any time during today's proceeding you have any trouble understanding, please let me know right away so that we take care of that problem.  Understood?

DEFENDANT VASQUEZ-BAEZ:    Yes, sir.

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.

Mr. Marquez-Alejandro, do you understand the Spanish language interpreter?

DEFENDANT MARQUEZ-ALEJANDRO:    Yes.

THE COURT:  All right.  Again, if you have any trouble during the proceeding, will you let me know?

DEFENDANT MARQUEZ-ALEJANDRO:    OK.

THE DEFENDANT:  OK.

THE COURT:  And Mr. Blondet, same to you.  Do you understand the Spanish language interpreter?

DEFENDANT BLONDET:    Yes.

THE COURT:  If you have any trouble, will you let me know right away?

DEFENDANT BLONDET:    OK.

THE COURT:  All right.

K1MEBLOC

Second preliminary question is, by my count there are five defendants still in this case as to whom charges have not been resolved, but there are only three here. I certainly understand from the Government's response to Mr. Blondet's motion that the Government doesn't anticipate anyone else going to trial; but that being said, I would have thought that all five would be here.

What's the situation?

MR. THOMAS: Your Honor, we misread the Court's order requesting the presence of the defendants for this conference. We understood the Court wished to speak to the defendants who joined in the motion. The remaining two defendants did not join in the application for an adjournment, and counsel for those defendants, I infer from their silence, read it the same way. We haven't heard from counsel from either defendant as to their anticipated appearance today.

THE COURT: The problem is they didn't join the motion but they are currently slated to go to trial at the same time as these defendants. It may be that they won't go to trial, in which case it will be a moot point. If something goes awry -- that is, with your expectations -- and they go to trial, whatever trial date I set is the trial date that they are stuck with.

In that regard, the motion does have some bearing on them, and indeed, I don't know if they are not joining it or if

K1MEBLOC

they are opposing it or have any views on it.  In that regard, I would have expected them to be here.

MR. THOMAS:  Understood.  We appreciate the Court's point and apologize for the failure to produce them.  We are happy to offer by letter after this conference further explanation as to why we are don't expect those defendants at trial.

THE COURT:  OK.  All right.

Well, let's proceed.

I'm not going to squander the time we have, but we'll deal with that if and when it arises and I'll keep my fingers crossed that it doesn't blow up in my face.

Let's arraign the defendants on the S-6 indictment.  I don't think they've been arraigned as of yet?

MR. THOMAS:  That's correct.

THE COURT:  Counsel, are you prepared to do that at this time?

MS. STERNHEIM:  Bobbi Sternheim, and yes, for Julio Marquez-Alejandro.

MR. DRATEL:  Yes for Mr. Blondet.

MR. MOSKOWITZ:  Yes for Mr. Vasquez-Baez.

THE COURT:  Why don't we do it in order with where they're seated.

Mr. Marquez-Alejandro -- you're welcome to stand by him, by the jury box if you'd like, or stay there.

K1MEBLOC

MS. STERNHEIM:  I can stand there and I'll speak loudly.

THE COURT:  Thank you.

Mr. Marquez-Alejandro, I'd ask you to please rise and I'm going to ask you four questions, and Mr. Vasquez-Baez and Mr. Blondet, I'll ask you these same questions in a moment.

First, have you seen a copy of the S-6 superseding indictment containing the current charges against you?

DEFENDANT MARQUEZ-ALEJANDRO:  Yes.

THE COURT:  And has it been translated for you into Spanish?

DEFENDANT MARQUEZ-ALEJANDRO:  Yes.

THE COURT:  Have you discussed the S-6 indictment with your lawyers?

DEFENDANT MARQUEZ-ALEJANDRO:  Yes.

THE COURT:  Would you like me to read or say the charges out loud or do you waive the public reading?

DEFENDANT MARQUEZ-ALEJANDRO:  No.

THE COURT:  I will treat that as a waiver.

How do you plead at this time, guilty or not guilty?

DEFENDANT MARQUEZ-ALEJANDRO:  Not guilty.

THE COURT:  Thank you.

Next is Mr. Blondet.  Counsel's already there.

Mr. Blondet, if you would please rise.  Have you seen a copy of the S-6 superseding indictment?

K1MEBLOC

DEFENDANT BLONDET:   Yes.

THE COURT:  Has it been translated for you into Spanish?

DEFENDANT BLONDET:   Yes.

THE COURT:  Have you discussed it with your lawyers?

DEFENDANT BLONDET:   Yes.

THE COURT:  Do you waive its public reading?

DEFENDANT BLONDET:   No.

THE COURT:  All right.  Would you like me to read it out loud or do you waive its public reading?

MR. DRATEL:  One moment, your Honor.

DEFENDANT BLONDET:   Not necessary.

THE COURT:  All right.

After discussing it with your lawyer, you would waive its public reading; is that correct?

DEFENDANT BLONDET:   It's not necessary.

THE COURT:  All right.  Thank you.

How do you plead at this time, guilty or not guilty?

DEFENDANT BLONDET:   Not guilty.

THE COURT:  Thank you.  You may be seated.

Lastly, Mr. Vasquez-Baez, have you seen a copy of the S-6 indictment?

MR. VASQUEZ-BAEZ:   Yes.

THE COURT:  Has it been translated for you into Spanish?

K1MEBLOC

MR. VASQUEZ-BAEZ:  Yes.

THE COURT:  Have you discussed it with your lawyers?

MR. VASQUEZ-BAEZ:   Yes.

THE COURT:  Do you waive its public reading?

MR. VASQUEZ-BAEZ:  Yes.

THE COURT:  And how do you plead at this time, guilty or not guilty?

MR. VASQUEZ-BAEZ:  Not guilty.

THE COURT:  All right.  Thank you.  You may be seated.

All right.  With that, let's turn to the main orders of business.  Let me start with the severance motion that was filed by Mr. Blondet alone.  One question on that front is, one of the issues raised in the motion as to which I don't think the Government responded pertains to admission of any codefendants' statements and invokes United States v. Bruton.

Can you speak to that?  Are there codefendant statements?  Will they be Brutonized?  What's the status of that?

MS. NICHOLS:  We have not made a final decision at this time as to whether or not we would seek to admit any statements made by any of the defendants, which would be admissible only as to the particular defendant that made the statement.

Of course, if we were to elect to seek to do that, your Honor, we would anticipate that all of the statements that

K1MEBLOC

we would offer would be properly admissible under Bruton and its progeny. I do think, Judge, that that's sort of a separate question. That's the question of admissibility, which is somewhat distinct from the question of a joint trial, and the Government is well aware that in a joint trial, in certain circumstances -- and I think that this is one of them -- that the 403 analysis may run differently.

But I do respectfully submit that that would be something that should be taken up properly when we move forward with the joint trial for the reasons that are stated in our motion.

THE COURT: Thank you.

So let me give my ruling on that motion. As stated in my November 4th opinion and order there is, "A preference in the federal system for joint trials of defendants who are indicted together, especially when, as here, the defendants are indicted as part of a common scheme or plan."

That's at page 8. Citations are omitted.

Thus, "a defendant who seeks separate trial under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." That's from the same page.

"Among the factors that the Court must consider are one, the number of defendants and the number of counts; two, the complexity of the indictment; three, the estimated length of the trial; four, disparities and the degrees of involvement

K1MEBLOC

by defendants in the overall scheme; five, possible conflict between various defense theories; and six, prejudice resulting from evidence admissible as to some defendants but not others."

See my prior opinion at pages 8 and 9.

Applying those standards here, the motion is easily denied substantially for the reasons set forth in the Government's opposition.  The motion would be more compelling if Mr. Blondet were charged with just the one murder, but he is charged along with the other defendants with a racketeering conspiracy, and much of the conduct relating to the other defendants about which he complains would, indeed, be admissible in a trial of him alone; and thus, two trials would indeed be duplicative and inefficient.

The fact that there may be more proof as to one or both of the other trial defendants is of no moment.  As I stated earlier in my opinion, "It is almost inevitable in an unlawful scheme or conspiracy involving several defendants some will be shown to have been more culpable than others."

That's at page 9.  Citations have been omitted.

Any issues that do arise can be addressed through appropriate curative instructions.  I'm not persuaded that this case will be so complicated or so lengthy that a jury would be incapable of following any limiting instructions that I give.

Accordingly, the motion for severance is denied.

Now, that leaves the motion for an adjournment.  Let

K1MEBLOC

me give you my preliminary thoughts on that.

First, let me thank both sides for their briefing on relatively short turnaround times. It was very helpful and very good briefing.

Now, one thing at the outset, I am persuaded by the Government's opposition that, at least based on the current record, that there's no basis to conclude that the Government has violated any of its disclosure obligations; and indeed, I don't read the defendants' papers to suggest otherwise.

More broadly, I largely found the Government's argument against an adjournment to be quite compelling. The fact is that the defendants have known, or have been on notice for a long time -- since the indictment -- and certainly since the June enterprise letter -- that the Government planned to prove that La ONU was an enterprise engaged in widespread acts of violence and corruption over a lengthy period of time. And while the particulars of many or most of the incidents set forth in the Government's December enterprise letter may not have been disclosed earlier, the Government represents that, with the exception of some crime scene photos, it doesn't intend to introduce any evidence of those crimes beyond testimony in its case in chief, that most of the relevant evidence constitutes Giglio material with respect to the cooperators who will be testifying, that in many respects the disclosure therefore constitutes a detailed and early

K1MEBLOC

disclosure of Jencks Act and Giglio material as to those defendants, and that, if anything, the defendants have gotten a sneak preview of information that the Government was not yet required to disclose.

Now, that is not to say that the Government will be allowed to present evidence concerning all of the conduct set forth in its enterprise letters at trial.  I am not ruling on that matter at the moment, but on first blush I do think that there are some significant Rule 403 issues to be addressed here -- evidence of the 21 additional homicides or whatever the number is.  I think I saw 21; in some papers 22.

That may be relevant to, and probative of, the existence of the racketeering conspiracy; but I do think that there is an argument to be made that at some point it would be overkill and that evidence of additional crimes should be limited on cumulativeness and prejudice grounds in any joint trial.  But my inclination is to think that those types of issues can and should be dealt in the normal course in the in limine process and will require a fact-intensive assessment of the evidence and its admissibility including, among other things, whether it would come out in any event with respect to any cooperator, cross-examination, the dates of the relevant conduct and its relationship to the dates in the indictment, and so forth.

That is my preliminary thinking.  I guess for those

reasons I am inclined to think that I would be on firm ground in denying any adjournment at all.  To put it differently, I don't think that the defendants have presented quote/unquote compelling reasons for an adjournment, and certainly not for an adjournment of the length that they propose.

Having said that, I am not unsympathetic to the defendants' contentions that they do need some additional time to prepare given both the nature and scope of the Government's disclosure -- that is, of the information disclosed in the December letter -- and in the unique circumstances presented here by the complications involved in investigating those arising from a language barrier, and perhaps most importantly and uniquely the recent events -- earthquakes in Puerto Rico -- that I would imagine would greatly complicate any such investigation.

I agree with the general point in the reply that whether or not the Government intends to introduce evidence about a particular murder or conduct is not relevant to the defense need to investigate the allegation.  Defense obviously would need to be prepared to meet any such testimony even if it would just be testimony.  For all those reasons, I am inclined to grant an adjournment, but just not of the length that the defendants have requested.

That's where I stand.  Let me ask before I open it to comment, first of all, does the Government still believe that

K1MEBLOC

this trial would be six to eight weeks?  Is that your assessment at this stage?

MR. THOMAS:  It is, your Honor, but we would just note for the Court that there's a realistic possibility of getting it closer to the six-week mark if there's stipulations with respect to certain change-of-custody witnesses and the possibility of coordination.  So we are sensitive to the length of the trial and we're working to streamline it, but it is not entirely within our control.  With some assistance from defense counsel, we think we'd be able to get it toward the shorter end of that range than the longer.

THE COURT:  Let me open it to responses to what I have had to say and I suppose, while you're at it, I told you by order yesterday you should be prepared to tell me if you -- about the trial dates that I threw out of April 20, 27, or May 4th, which are dates in that order of preference on my end.

I think that length of adjournment is appropriate given the circumstances that I've described and more appropriate than the shorter adjournment as to which the Government consented.  I also think there are various holidays in April and it doesn't entirely make sense to start the trial just before those holidays.  I will be out for at least four days in connection with one of those holidays.  I suspect it would implicate some jurors and maybe it may implicate some of you, but the bottom line is I think it makes sense to start

K1MEBLOC

after those holidays are behind us, which would put us in that April 20th territory.

Why don't I start with you, Ms. Stern.

MS. STERNHEIM:  Thank you, Judge.  Judge, when we requested six months, we felt it was a realistic need but we certainly understood that we were unlikely to get what we asked for.  We have spent the better part of today and part of yesterday trying to coordinate the schedules amongst the defense, and in preparing for the trial in February, we pushed a lot of matters forward into April and into May.  That leaves us with some issues for individual counsel, which creates a problem with the three suggested dates that the Court presented.

Our counterproposal would be June 16th.  All counsel would be available, we can undo some commitments that we have, and we request, in connection that, that we have a bit of an extended break for the July 4th holiday since various counsel have commitments for which they have already paid and which involve various family members.

We think that that is not an unreasonable request.  We recognize that it is somewhat longer than that which the Court proposed, but because of professional commitments, as well as some personal commitments, we just could not all be available within that time period.

That being said, we would be committed and ready to

K1MEBLOC

begin on June 1st.

THE COURT:  OK.  Can you maybe elaborate and tell me what the conflicts are?  And why don't we start with the latest of the dates we threw out recognizing it was my lowest preference.  But let's say May 4th to June 1st, what are the conflicts?

MS. STERNHEIM:  At least one of my counsel will be on trial.  It would end on the date, if all went well, that the Court wished to start and there's a likelihood that it would go beyond that.  There are other personal commitments.

THE COURT:  And who is that and what's the trial?

MS. STERNHEIM:  OK.  That is Louis Freeman's trial and he will tell you before whom.

MR. FREEMAN:  I have a trial --

THE COURT:  Can you find a microphone?

MR. FREEMAN:  I'm sorry.  I remember this room for its audibility issues.

I have a trial in front of Judge Ramos on April 13th. It is a murder case.  The defendant is incarcerated.  That trial is scheduled to go approximately two weeks.  In order to be safe in committing to your Honor to try the case when that case ends, I think that the May 4th date would be safe for me, but that impacts other people's plans.

THE COURT:  I hate to point out, but if the case was slated to go six to eight weeks, you have to assume that it

K1MEBLOC

might go eight and even beyond eight and that puts you beyond that April 13th date, so the February 25th date posed a problem for you already.  It's neither here nor there if I'm pushing a trial date, but I did want to note that.

Now, who has a more compelling argument with respect to the May 4 date?

MR. MOSKOWITZ:  Your Honor, I do.  On a personal note, my wife in undergoing surgery on the 4th.  She is donating a kidney on that day.  I would like to be able to be there and really to be available at least for the first few days at home while she's convalescing.

THE COURT:  OK.

Anyone else?

MR. REEVE:  Your Honor, I scheduled and have prepaid for a vacation that's out of the country from May 20th to May 30th.

MS. O'NEILL:   Your Honor, I'm actually taking a vacation to visit my daughter's birth family over the Memorial Day weekend.  It's going to be extended around that holiday. My cocounsel would like me to add that I adopted a baby and it's her opportunity to rekindle with her siblings, including a sibling adopted by someone else who is also coming down for that holiday.  It's independence day in --

THE COURT:  Here's the problem.

Number one, I'll be out for the Second Circuit

Judicial Conference on June 11th and 12th. Those dates are not available. I'm participating in the conference. I would otherwise skip it -- and maybe I can find a substitute at this point, but I am on the planning committee and it would be a little awkward not to be there. I don't know how long of a break you're anticipating for the July 4th stretch but --

MS. STERNHEIM: I can fill in the blank for that one. It would be from July 2nd to July 8th. Various counsel have commitments to travel -- some out of the country -- and given that the holiday falls as it does, it would only be three court days that would be missed.

Putting that into the mix, with regard to jury selection, that often is a stumbling block when trials occur. On the schedule that we propose, we would not have the problem of Memorial Day, and it would alleviate a potential problem around the July 4th holiday.

THE COURT: The problem is that I need to tell the jury that it could be an 8-to 10-week trial and that implicates more or less the whole summer. I won't be a happy camper if this trial goes into August because of plans of my own.

MS. STERN: Your Honor, I personally have a trial at the beginning of August. We all discussed that. We would very much try to be as efficient as possible and make very good use of the time, if the Court grants our request.

THE COURT: Do you have a response to the Government's

K1MEBLOC

statements regarding the length of the trial and the relationship between that and the prospect of stipulations?

MS. STERNHEIM:  Your Honor, the Government obviously is in the best position to estimate how long the trial is going to be, and I hope that that estimate includes also the fact that there will be various witnesses and our clients' need for translations.  The Government raises the issue with regard to stipulations.  I can speak from prior involvement with most counsel here, and we typically have been amenable to stipulate and work out ways of shortening the case, but I can't say with certainty because I don't yet know exactly what the Government will propose, but this is not a group that is flatly going to say no.

To the extent that could also shorten things, we would work with the Government to do that.

THE COURT:  All right.

Anything you guys have to say here?

MR. THOMAS:  Your Honor, the Government is available on any of the dates that have been discussed.

THE COURT:  All right.  Well, with some misgivings for any number of reasons, including some relating to my life, I will set it for June 1st.

Let me say that I will expect everybody to try this case as quickly and efficiently as possible.  Obviously, I don't mean to pressure anyone to give up any rights that they

K1MEBLOC

may have, or do anything that would prejudice them, but I would like you all to work on that in streamlining the case as much as you reasonably can.

I do want to emphasize, again -- you know my views on firm trial dates. I bow to the reality here that I think an adjournment is appropriate for the reasons stated, but I want everybody to understand the June date is a firm date. That's the date we are going to trial.

To the extent you have any arguments or issues that come up, you'd better raise them sooner rather than later. We will talk about the schedule between now and then in a moment.

Everybody understand that?

MS. STERNHEIM: Yes. We are very mindful and appreciative, and we will comply with the Court's request to be as tidy about everything as possible.

THE COURT: Ms. Dratel, do you understand?

MR. DRATEL: Yes, your Honor.

THE COURT: Mr. Freeman, do you understand that?

MR. FREEMAN: If you're asking me to state that I heard what you said, I acknowledge that and I intend to abide by what Ms. Stern said. I was going to ask you what you envision the trial schedule to be. Would that be five days a week?

THE COURT: You should plan on five days a week. My general schedule is 9:00 to 2:30 once I have selected a jury,

K1MEBLOC

but jury selection would be 9:00 to 5:00.

Once a jury is selected, my normal schedule is 9:00 to 2:30.  I am telling you now I want you to be prepared potentially for longer days.  As we get closer and have a better sense of actually how long this trial is going to be, one of the ways I can shorten it is by sitting longer days.  But you should still plan to sit five days a week.

MR. FREEMAN:  I've tried cases in front of judges that keep that schedule and I understand that it's not always 9:00 to 2:30.

THE COURT:  It's sometimes goes later in order to finish the trial expeditiously just like you said.

Mr. Moskowitz, do you understand that's a firm date?

MR. MOSKOWITZ:  Yes, your Honor.

THE COURT:  Mr. Vasquez-Baez, do you understand that that is a firm date?

DEFENDANT VASQUEZ-BAEZ:   Yes, your Honor.

THE COURT:  Mr. Marquez-Alejandro, do you understand that that is a firm trial date?

DEFENDANT MARQUEZ-ALEJANDRO:   Yes.

THE COURT:  Mr. Blondet, do you understand that's a firm trial date?

DEFENDANT BLONDET:  Yes.

THE COURT:  And does the Government understand that that's a firm trial date?

MR. THOMAS:  We do, your Honor.

THE COURT:  All right.  A couple things.  I think that we need to think through the schedule between now and then.  I have a jury.  They are supposed to be discharged around now so both because of that and because I think it might be helpful for you guys to confer and propose a comprehensive schedule that gets us basically to that trial date -- mindful also of the conflicts that have been cited -- I'm going to ask you to confer amongst yourselves and submit a proposal that deals with all of the deadlines that have been set already, adjusting them for the new trial data along with any new deadlines that you think would be appropriate.

The defense motion referenced possible motions based on a constructive amendment, speedy trial, and I'm inclined to think that those things can and should be dealt with in the context of an in limine motion with respect to the admissibility of the evidence referenced in the Government's letter.  But to the extent that there's a motion, for instance, that the defendants intend to bring, it may be more appropriate to set an earlier deadline for that.  I think you guys should discuss this and see if you can reach an agreement and submit a proposal to me.  If I disagree, I will revise it.

I will ask you, particularly, in that I gave you more time than I was prepared, having an earlier final pretrial conference and a longer amount of time for me to consider any

K1MEBLOC

motions that are briefed understanding there are going to be substantial ones would be beneficial.  Rather than adjusting the deadlines to the new trial date, I think moving them forward and giving me more time to think about -- and us to have time to have a final pretrial conference -- recognizing there may be matters to deal with after that conference may be appropriate.  Taking advantage of that time would make sense.

I would throw out there the Government's opposition, at least with respect to the shorter adjournment, that the Government be prepared to forgo some proving up some of the conduct referenced in its letters.  I don't know where that stands.

I don't know, in light of Mr. Dones-Gonzalez's plea yesterday, if the Government's plans have changed.  I think one of the things that you might want to discuss -- whoever's device just went off, you should make sure it is shut off.

One of the things you should discuss is if there's a date by which the Government should give final notice of what it intends to prove at a trial of these three defendants so that that can frame the relevant motion practice to be had.

Anyone object to proceeding in that manner?  Having you guys discuss those things and submitting a proposal to me with a detailed schedule?

MS. STERNHEIM:  No objection from the defense and I believe we all agree.

K1MEBLOC

MR. DRATEL:  Would that include the final pretrial conference?

THE COURT:  Yes.  It's not going to be February 13th. I can't imagine that all the relevant motions papers would be submitted by then or that I would have enough time to deal with them.  One option would be to give you a date for that right now and you can work backwards from that.  I know that somebody was away from May 20th to 30th.

Can we set the final pretrial conference for Tuesday May 19th at 10 a.m.?

MS. STERNHEIM:  Judge, I was probably the only one who didn't have a major conflict with anything, but I do have a graduation to attend.  I believe it is in the afternoon and therefore the morning would be no problem.  If it is in the morning, would it possible to switch it to the afternoon?  If you want to give me a minute, I can try and find out right now and come right back.

THE COURT:  Why don't you try and find out.

MS. STERNHEIM:  I'm just going to step outside for a moment.

THE COURT:  Sure.

Does that date work for everyone else?  Speak now if it doesn't.

MR. DRATEL:  Yes.

MR. FREEMAN:  Yes.  Your Honor.

MS. STERNHEIM:  The current information -- and it's not a hundred percent -- is that it's in the afternoon, so the morning would be fine.

THE COURT:  What time in the afternoon?  Do you know?

MS. STERNHEIM:  I don't know exactly because I wasn't able to speak to the graduate -- only the parent, who doesn't have all the information.

THE COURT:  Why don't we set it for 9:30 a.m. on Tuesday, May 19th, just to get as much time as we can in.

Ms. Stern, if you would, please try and find out within the next day or so if your information is incorrect, in which case confer with everyone in the afternoon if that day works so then I can adjust it.

MS. STERNHEIM:  I truly appreciate it.

THE COURT:  All right.  One last thing to note.  I'm inclined, in speaking to some colleagues who've held long trials, I know some have utilized a jury questionnaire on hardship alone.  That is to say, basically, a short questionnaire that addresses hardship questions, and I think Judge Engelmayer did that and then essentially eliminated anyone that both sides agreed would have a valid hardship excuse and focused jury selection, in the first instance, on those who didn't have any hardship claim, or those as to which both sides agreed didn't have a valid claim.

I'd be inclined to do the same.  Granted, if it's a

K1MEBLOC

six-to eight-week trial, I mean, it's a long trial.  It's over the summer.  I think that would probably speed up jury selection considerably.

Anyone object to that?

MR. FREEMAN:  We don't object to that; however, I have been working on a longer questionnaire and I would ask your Honor to -- it does include a hardship series of questions.  I would ask your Honor to keep an open mind and review the questionnaire to see if you'd be willing to use the questionnaire as drafted.

THE COURT:  I will promise to keep an open mind.  I will tell you, you have an uphill battle -- which is to say, I think that it makes sense to do hardship by questionnaire, but my inclination is to think that we can efficiently deal with the rest of it in the manner that you do jury selection, but I will keep an open mind.

MS. NICHOLS:  We agree with that, your Honor.  I think it's a good idea -- especially for the summer being very near -- to have some sense of the questionnaire ahead of time.

I would say that I think that sometimes when substantive-type questions are added to a questionnaire, it ends up adding redundancy to the process but not prejudicing what counsel may wish to submit in writing.

MR. FREEMAN:  Can I ask the Government and Court if they promise to keep an open mind?

K1MEBLOC

MS. NICHOLS:  I already said that I would.

MR. FREEMAN:  Thank you.

THE COURT:  Everyone will keep an open mind.  I would urge you maybe in your discussions about deadlines to perhaps move the jury questionnaire proposal up because, among other things, I would need to deal with the jury department to coordinate that depending on what, if any, questionnaire I use; but at a minimum, I will plan to use a questionnaire with respect to hardship, and again, you can discuss deadlines for anything beyond that.

MR. FREEMAN:  I thought you were going to give a date and I didn't hear it.

THE COURT:  You're to discuss the schedule between now and the final pretrial conference trying to give me as much time to sit with any motion papers as you can but recognizing that you have the benefit of the adjournment to brief things as well.

Anything else other than speedy issues?

MR. FREEMAN:  I think it's implicit, but I want to ask directly if you have agreed to the break between July 2nd and July 8th.

THE COURT:  Yes.

MR. FREEMAN:  Thank you.

THE COURT:  I think my family would have some words with me if I didn't, but yes, I agree to that.

K1MEBLOC

Anything else aside from the speedy trial application?

MR. THOMAS:  Your Honor, the Government moves to exclude time between today and the start of the trial, June 1st.  That exclusion would be in the interests of justice and outweigh the interests of the defendants and public in the speedy trial for the reasons articulated by the defendants in their motions to include their need to travel to Puerto Rico and investigate the disclosures made in the December 27th enterprise letter.

THE COURT:  Any objections?

MS. STERNHEIM:  No objection.

MR. FREEMAN:  No, your Honor.

MR. DRATEL:  No, your Honor.

THE COURT:  I will exclude time between today and June 1, 2020.  I find the ends of justice served by excluding time outweigh the interests of public and defendants to a speedy trial, to provide defendants adequate time to investigate the matters set forth in the defendant's enterprise letter and to brief the various issues that require briefing, and to ensure continuity of counsel given the various scheduling issues that we have discussed.

Since nobody has indicated the need to discuss anything else, I think that concludes this matter.

(Adjourned)